UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIA DEL ROCIO MONSALVE,

        Petitioner,

vs.

        Case No. 8:04-CV-1866-T-27TBM
        Cr. Case No. 8:02-CR-22-T-27MSS

UNITED STATES OF AMERICA,

        Respondent.
_____/

## ORDER

**BEFORE THE COURT** is Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Dkt. 1), and the Government's Response in Opposition (Dkt. 5).[1] In her § 2255 motion, Petitioner asserts two claims for relief. In Ground One, Petitioner alleges that she has newly discovered evidence which would establish her innocence, combined with the unconstitutional failure of the Government to disclose favorable evidence. In Ground Two, Petitioner contends she received ineffective assistance of counsel during trial. Upon consideration, Petitioner's motion (Dkt. 1) is DENIED.

### Procedural History

Petitioner was charged with conspiracy to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. §§ 841 and 846 (Count One) and attempting to possess with intent to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. §§ 841 and 846 (Count Two). (Dkt. Cr. 10). After a jury trial during which Petitioner testified, she was convicted of conspiracy and acquitted of attempted possession. (Dkt. Cr. 33). She was sentenced to 151 months

---

[1] Although granted leave, Petitioner, through counsel, determined not to file a reply to the Government's Response. (Dkts. 8, 10).

imprisonment and 5 years of supervised release. (Dkt. Cr. 40). Her conviction was affirmed on appeal. (Dkt. Cr. 67).

The facts presented at trial, summarized by the Government in its Response in Opposition to Petitioner's Motion to Vacate, are not contested by Petitioner and the Court finds them to be accurate. This investigation began when an undercover Customs agent, posing as a drug smuggler, received 100 kilograms of cocaine from Columbian drug traffickers and brought the cocaine to Tampa. Alberto Sanchez and Petitioner's brother, Ivan Monsalve, (a/k/a "Hiram Rodriguez"), representatives of the Columbian traffickers, contacted the agent to arrange payment for the cocaine. Sanchez traveled to Tampa to pick up the cocaine while Ivan Monsalve remained in New York to make payment. After negotiations, the parties agreed on a $135,000 purchase price. Approximately an hour after the agreement was reached, Ivan Monsalve arrived at the agreed payment location driving a van in which Petitioner was a passenger. Petitioner was holding a package in her lap.

Petitioner handed the package to the undercover agent. The package contained $133,800. After the exchange, Petitioner and her brother were arrested. Post-*Miranda*, Petitioner falsely told the arresting officers that she was on a date with "Luis," the man driving the van, who had asked her to accompany him on an errand with the package she had handed to the agent. Petitioner disclaimed any knowledge of the contents of the package. (Dkt. Cr. 57, p. 132). Based on her statements, Petitioner was released. Several months later, during an intercepted telephone conversation between Petitioner and her brother, who was in custody, they agreed that they "must get out of this." A recording of this conversation and a transcription of the recorded conversation were admitted into evidence. (Government Trial Exhibits 5, 6). The transcript was distributed to the jury during testimony discussing the content of the recording. (Dkt. Cr. 58, pp. 13, 30-31). After this

conversation was intercepted, Petitioner was arrested. After her arrest, Petitioner told the agents that on the day of the drug transaction, she and her brother had been "driving around going to cell phone stores and money remitters to wire money down to their mother."

Sanchez testified on behalf of the Government at Petitioner's trial. He testified that he met Petitioner only a short time before the Tampa deal, when she moved into the New York apartment he and Ivan Monsalve had used to hide money from another cocaine deal in New Orleans. According to Sanchez, Petitioner was aware of his and her brother's drug dealings, had helped them count the hidden money and had been aware of the details of the New Orleans drug deal as well as the Tampa transaction.

Petitioner testified that on the day of the transaction, she had asked her brother to pick her up so that she could go shopping for a television. She testified they had shopped all day and when he was dropping her off, she offered to go with him on an errand he said he was going to run. She testified she handed the bag to the agent because her brother had asked her to do him a favor by picking up the bag from inside the van. Petitioner, through counsel, attempted to call her brother to testify. Her brother invoked his Fifth Amendment right, however, and was excused. Petitioner presented no other witnesses. (Dkt. Cr. 58, pp. 67-68).

Prior to commencement of jury selection, Petitioner's counsel learned that Petitioner's family members were not, as he had expected, in Tampa and available to testify. At Petitioner's urging, counsel moved for a continuance so that Petitioner's family could travel to Tampa for the trial and be available as character witnesses. His motion was denied but trial began three days after jury selection, affording a sufficient time for Petitioner's family members to travel to Tampa from New York if they were so inclined. Notwithstanding, at the conclusion of her testimony, Petitioner made

a spontaneous statement to the jury about her family and explained that they could not be there because of an "economic situation".[2] (Dkt. Cr. 58, p. 114).

## Ground One: Newly discovered evidence/*Brady* claim

Collateral relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States,* 837 F.2d 965, 966 (11th Cir.1988). Generally, only constitutional, jurisdictional and fundamental error claims are properly raised in a § 2255 motion. *United States v. Addonizio,* 442 U.S. 178, 184-86 (1979). Petitioner's claim of newly discovered evidence does not meet this threshold for relief under § 2255. Claims of newly discovered evidence are properly raised by motion for new trial pursuant to Rule 33, Fed. R. Civ. P.[3]

Petitioner's claim of newly discovered evidence based on her brother's availability to testify and his offer to recant his previous invocation of his Fifth Amendment right is not newly discovered evidence, only evidence which was not available to Petitioner at the time of trial. In any event, such a claim does not rise to a constitutional level nor could it be considered fundamental error. For that matter, it isn't error at all, constitutional, jurisdictional or otherwise. Neither the Court nor the Government had any control over or involvement in her brother's invocation of his Fifth Amendment

---

[2] The Government mistakenly attributes a question posed to Petitioner in the presence of the jury to the Court. That question was posed by defense counsel. (Dkt. Cr. 58, p. 114).

[3] To prevail on a motion for a new trial based on newly discovered evidence, a defendant must establish: (1) the evidence must be newly discovered and have been unknown to the defendant at the time of trial; (2) the evidence must be material and not merely cumulative or impeaching; (3) the evidence must be of the type that will probably produce an acquittal; and (4) the defendant's failure to learn of the evidence must not be the result of lack of diligence. *United States. v. Wilson,* 894 F.2d 1245, 1252 (11th Cir. 1990)(*citing United States v. Sjeklocha,* 843 F.2d 485, 487 (11th Cir. 1988))

right not to testify. He was brought before the Court, represented by counsel. He followed his attorney's advice, invoked his Fifth Amendment right and declined to testify for his sister. This claim is not cognizable in a § 2255 proceeding.[4]

Petitioner, apparently recognizing that her claim of newly discovered evidence is not cognizable under § 2255, artfully combines that contention with an allegation that the Government, in violation of *Brady*,[5] failed to disclose a recording of a conversation between Petitioner's brother and the cooperating co-defendant, Sanchez, which she claims is favorable. She contends that now that her brother is available to testify, his testimony will "confirm the fact that Alberto Sanchez's testimony cannot be relied upon." (Dkt. 2, p. 7). Essentially, Petitioner contends that her brother's testimony will impeach Sanchez and together with the recording of their conversation, show that Sanchez was untruthful. Petitioner's contentions are without merit.

The Government contends that it disclosed all recorded conversations in its possession to defense counsel. (Dkt. 5, p. 9).[6] Moreover, although Petitioner claims the recording was not disclosed, she obviously has the recording and has had it at least since April 2004, as she attaches an April 2004 transcription to her memorandum in support of her § 2255 motion. (Dkt. 2, Exh. 4). She does not, however, explain how and when she came into possession of the recording. The Court will assume, however, for purposes of expedience, that she obtained it after her trial from a source

---

[4] It likewise appears that this claim is procedurally defaulted since Petitioner never raised it with the district court or on appeal, notwithstanding that Petitioner represents that some but not all of her brother's letters evidencing his desire to testify were available to her "between the conviction and the sentencing." (Dkt. 2, p. 7).

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

[6] The Government's contention that Petitioner's *Brady* claim is procedurally defaulted is confusing. The transcript of the subject recording relied on by Petitioner was prepared in April 2004, well after Petitioner's conviction, sentencing and appeal. Assuming Petitioner's claim that it was not disclosed is true, any *Brady* claim was not available to her while the case was before the district court and the appellate court.

other than the Government.

Regardless of whether the particular recording was disclosed, Petitioner's *Brady* claim fails. To establish a *Brady* claim, Petitioner must prove that the withheld evidence is favorable and that had the evidence been disclosed, a reasonable probability exists that the outcome of her trial would have been different. *United States v. Bailey*, 123 F.3d 1381, 1397 (11th Cir. 1997); *United States v. Meros*, 866 F. 2d 1304, 1308 (11th Cir.), *cert. denied*, 493 U.S. 932 (1989); *Routly v. Singletary*, 33 F.3d 1279 (11th Cir. 1994)(to establish *Brady* violation, defendant must prove that: (1) state possessed evidence favorable to the defendant; (2) defendant did not possess the evidence nor could defendant have obtained it herself with any reasonable diligence; (3) prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different). A constitutional error occurs only when the evidence is material such that its suppression undermines confidence in the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 678 (1985); *United States v. Starrett*, 55 F.3d 1525, 1555 (11th Cir. 1999), *cert denied*, 517 U.S. 1111 and 517 U.S. 1127 (1996).

A review of the transcript of the subject recording reveals that there is nothing material to its content, considering the evidence presented and the strength of the Government's case. *United States v. Agurs*, 427 U.S. 97, 112 (1976). Moreover, there is nothing favorable and certainly nothing exculpatory to Petitioner in the recording. Petitioner argues that it has impeachment value. She contends that the recording "[c]learly" shows that "Mr. Sanchez lied to the jury and the Court when he testified that he was introduced to the petitioner by her brother." (Dkt. 2, pp. 7-8). Petitioner claims that the recording reveals an inconsistency with Sanchez's testimony, demonstrating that Sanchez was unreliable, in that the recording confirms that when Sanchez first met Petitioner, she

introduced herself to Sanchez.[7] She urges that with the recording, trial counsel "would have been able to successfully impeach Mr. Sanchez's testimony" and "the jury could not have connected the petitioner with the conspiracy . . . ."

Petitioner's bold conclusion that "the jury could not have connected the petitioner with the conspiracy" if the tape had been available to her attorney ignores the other evidence from which the jury concluded that Petitioner was a knowing participant in the conspiracy. Contrary to Petitioner's argument, the recording at most has only marginal impeachment value. It certainly does not demonstrate a reasonable probability that the jury's verdict would have been different, considering the evidence against Petitioner. At the agreed time and location of payment for the cocaine, the agents observed her holding the package containing the drug money in her lap and handing it to the undercover agent. She made false exculpatory statements to the agents at the scene and was released as a result. A few months later, she was overheard having an inculpatory conversation with her brother during an intercepted telephone call. During trial, she testified to yet another explanation for her presence at the transaction. These inconsistencies support the jury's finding that she was a knowing participant in the conspiracy, independent of Sanchez's testimony.

Sanchez's testimony simply confirmed that Petitioner was a knowing participant in the conspiracy. Sanchez was subjected to a thorough cross examination, during which he was impeached and his credibility challenged. (Dkt. Cr. 57, pp. 168-187). Notwithstanding the significance of his testimony, however, the marginal impeachment value of the recording does not come close to approaching the type of false testimony demonstrating the likelihood of a different

---

[7] As the Government points out, Petitioner herself testified that she was introduced to Sanchez by her brother. (Dkt. Cr. 58, p. 78: Q: "How did you know him?(referring to Sanchez) A: My brother introduced him to me.")

result which was discussed in *Reagor v. United States*, 488 F.2d 515, 516 (5th Cir. 1973). The recording would not "exonerate" Petitioner as she claims. Assuming it was not disclosed, it would not establish a reasonable probability that the jury's verdict would have been different. Petitioner's *Brady* claim is therefore without merit.

### Ground Two: Ineffective assistance of counsel

Petitioner's second claim that she received ineffective assistance of counsel is likewise without merit. In order to demonstrate ineffective assistance of counsel, Petitioner must meet the test established by *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998)(*citing Strickland*, 466 U.S. at 687).

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "Our role in reviewing an ineffective assistance claim is not to 'grade' a lawyer's performance; instead, we determine only whether a lawyer's performance was within 'the wide range of professionally competent assistance.'" *Van Poyck v. Fla. Dept. of Corrections*, 290 F.3d 1318, 1322 (11th Cir. 2002)(*quoting Strickland*, 466 U.S. at 690). "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner

must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Id. (citing Chandler*, 218 F.3d at 1315).

Counsel's trial strategy cannot be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler*, 218 F.3d at 1314 (*quoting Strickland v. Washington,* 466 U.S. at 689). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Moreover, where the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment. As counsel's trial strategy is presumptively reasonable, the determination is not "that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not do a specific act." Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Chandler*, 218 F.3d at 1314-15.

Petitioner has not and cannot establish that counsel's representation, from an objective perspective, was so deficient that "no competent counsel would have taken the action that [her] counsel did." *Id.* at 1315. Where, as here, Petitioner is unable to establish either prong of the *Strickland* analysis, her claim must be dismissed. *See Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995).

Petitioner contends that trial counsel was ineffective in failing to call her family members as character witnesses. Her contention is without merit. Based on his remarks to the Court on the morning of jury selection, Petitioner's counsel expected Petitioner's family members to be available as potential character witnesses, since he had talked with them and told them about the trial date. (Dkt. Cr. 56, p. 5-7). On the morning of jury selection, unexpectedly finding that they had not

traveled to Tampa, counsel moved for a continuance. Id. Although counsel's motion to continue was denied, the evidentiary portion of the trial did not actually begin until the Wednesday after jury selection. After the Court explained that it would accommodate the travel requirements of the witnesses by adjourning until Wednesday of that week, counsel agreed that "we can work with that."[8] (Dkt. Cr. 56, p. 7)

A sufficient amount of time was therefore afforded Petitioner's family members to travel from New York to Tampa. That they did not or could not make the trip is not determinative of Petitioner's claim of ineffective assistance. In response to their unexpected absence, Counsel did what was reasonable under those circumstances, moving for a continuance to enable Petitioner's family members to make the trip to Tampa. It is apparent from Petitioner's testimony, however, that they did not make the trip because of reasons beyond the control of counsel. Petitioner herself explained to the jury that they could not be there because of an "economic situation." (Dkt. Cr. 58, p. 114).

Regardless of the availability of Petitioner's family members, the decision of whether to call character witnesses is a tactical decision, one made within the range of reasonable professional competence which is not subject to collateral attack. *Lema v. United States*, 987 F.2d 48 (1st Cir. 1993). A tactical decision amounts to ineffective assistance "only if it was so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright, supra* at 1445. Counsel's conduct and decisions must be judged on the facts of the particular case. *Strickland*, 466 U.S. at 660. Although counsel expressed some misgivings about presenting character witnesses, he represented that he would call them if Petitioner insisted. (Dkt. Cr. 56, pp. 5-6). The witnesses' unavailability precluded counsel from even making a strategic decision of whether to call them.

---

[8] Petitioner's husband and daughter were present in court at sentencing.

Here, it has not been shown that counsel's performance was deficient and below what was reasonable. His trial strategy and tactical decisions have not been shown to have been wrong. From this Court's perspective, having presided over the trial, Petitioner's counsel's performance was well within the wide range of professionally competent assistance to which Petitioner was entitled. Petitioner has not established that her lawyer's failure to call character witnesses fell below an objective standard of reasonable professional assistance or that Petitioner was prejudiced by the deficient performance.

Petitioner contends that "[h]ad her husband or other character witnesses been allowed to testify at trial, Monsalve's innocence could have been corroborated by testimony other than her own." (Dkt. 2, p. 11). Considering the evidence presented at trial, Petitioner's contention is not persuasive. Even if her attorney's failure to call character witnesses was in some way deficient, Petitioner has not shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Given Petitioner's false statements to the arresting officers concerning her brother's identity, her subsequent incriminating conversation with her brother, and Sanchez's testimony that she was a knowing participant in the conspiracy and had assisted in counting currency from another drug deal, it is not likely that character testimony from Petitioner's family would have changed the outcome of the trial.

To establish the prejudice prong of *Strickland's* two-part test, Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The inquiry is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The proceeding must have been rendered unfair and the results suspect. *Lockhart v. Fretwell*, 506 U.S. 364 (1993); *Atkins v.*

*Singletary*, 965 F.2d 952, 958-59 (11th Cir. 1992), *cert. denied*, 515 U.S. 1165 (1995). Here, Petitioner has not made the requisite showing of prejudice.

Petitioner's request for an evidentiary hearing is denied. There is no need for an evidentiary hearing as it "plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002).

Accordingly, it is

**ORDERED AND ADJUDGED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentencing Pursuant to 28 U.S.C. § 2255 (Dkt. 1) is DENIED. The Clerk is directed to enter judgment against Petitioner and close this case.

**DONE AND ORDERED** in chambers this 8th day of August, 2006.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Petitioner
Counsel of Record